```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

John J. Parker

    v.                                        Civil No. 16-cv-187-JD
                                                Opinion No. 2018 DNH 133
Warden, New Hampshire
State Prison for Men


O R D E R

John J. Parker, proceeding pro se, seeks habeas corpus relief under 28 U.S.C. § 2254 from his state conviction and sentence on five charges of aggravated felonious sexual assault. The warden moves to dismiss the petition as untimely and, alternatively, seeks summary judgment on the merits of the claims. Because the petition is dismissed as untimely filed, it is not necessary to consider the motion for summary judgment on the merits.

Background

Parker lived with his nephew, William Knightly, and his family in Nashua in 1993. William and his wife, Dorothy, had two daughters and three sons. One of the daughters, Holly, was twelve years old while Parker lived with the family in 1993.

In 2008, Holly told her mother that Parker had sexually assaulted her while he lived with them and had threatened to hurt her or kill her if she told anyone. She said that after

Parker left she saw him two more times, once in early 1994 and again in 1996. Each time, Parker threatened her. Holly said that she had not reported the assaults sooner because of Parker's threats and because she was afraid her father would hurt Parker and would go to jail.

Dorothy Knightly reported Holly's accusations to the Nashua police who conducted an investigation. Parker was indicted on sexual assault charges in July of 2009. After several continuances, trial was held in November of 2011.

Holly testified at trial about the assaults and Parker's threats, including the two threats when she saw Parker in Nashua after the assaults. Parker also testified.

Parker said that he lived with his nephew, William, and his family for twenty-nine days after he returned to New Hampshire from Florida. He also said that he slept downstairs in the house and that Dorothy, Holly's mother, had a rule that he was not allowed upstairs. He denied assaulting Holly and said that he was innocent. He also said that he never saw Holly after he stopped living in the house and that he never came back to Nashua. On cross examination, however, Parker said that he did come back to Nashua once for five minutes to get photographs.

Because of Parker's testimony about the rule that he could not go upstairs and that he left Nashua and came back only for one five minute stop, the state was allowed to recall Dorothy

2

Knightly, Holly's mother, to testify. Dorothy testified that there was no rule that Parker could not go upstairs. Dorothy also testified that she saw Parker around Nashua after he moved out of their house. Once Parker came running toward her screaming while she was driving and other times she would see him while she was driving her school bus and he would yell at her and give her the finger. Dorothy also refuted Parker's testimony that he helped the family with work on their house.

The jury found Parker guilty on all five charges. His conviction was affirmed on appeal. State v. Parker, No. 2012-0235 (N.H. May 23, 2013). Parker then moved to amend his sentence, filed a petition for a writ of habeas corpus, and moved for a new trial in his criminal case. His motions were denied, and the New Hampshire Supreme Court declined his appeal.

Parker filed his § 2254 petition in this court on May 9, 2016. The magistrate judge determined that Parker did not file his petition within the time allowed by 28 U.S.C. § 2244(d). See Doc. no. 3. Parker was given an opportunity to show cause why his petition should not be dismissed as untimely. Parker filed a response to that order.

The magistrate judge considered Parker's response and found that his reasons for filing after the deadline did not show uncommon circumstances that would support equitable tolling of the limitations period. The magistrate noted, however, that

Parker also asserted that he was actually innocent. For that reason, the magistrate judge allowed Parker to file an amended petition to address actual innocence. Specifically, the order directed Parker "to file an amended habeas petition which includes specific facts that provide a basis for this court to excuse this action from the otherwise applicable statute of limitations based on a credible and compelling claim that Parker is actually innocent of each of the offenses underlying his conviction and sentence." Doc. no. 5 at 3. Parker filed an amended petition with ten exhibits. Doc. no. 6.

## Discussion

As was determined by the magistrate judge, the one-year limitation period for petitions under § 2254 expired four months before Parker filed his petition. Parker asserts in his amended petition, however, that he is actually innocent of the charges of felony sexual assault. The warden moves to dismiss the petition on the ground that Parker has not met the standard for showing actual innocence as a basis for avoiding the statute of limitations.

"[A]actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).

4

A showing of actual innocence, however, is rare.  Id.  A petitioner bears the burden of persuading the court that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  Id.

A petitioner must support his claim of actual innocence "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" that is sufficient to persuade the court.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  New evidence for purposes of a claim of actual innocence is relevant evidence that was either excluded from or not available before the petitioner's trial.  Id. at 327.

In this case, Parker has not met his burden to support his claim of actual innocence.  Parker states in the amended petition that he was deprived of "important discovery tools" during the criminal proceeding.[1]  In particular, Parker argues that because his attorney did not call certain witnesses who would tell the truth about him, the trial was unfair and one sided.  He asks the court to "hear the cry's of an innocent man" but provides no explanation as to how the exhibits appended to the amended petition and his objection to the motion to dismiss show his innocence.  In his objection to the warden's motion,

---

[1] Parker acknowledges that he was represented by counsel but faults defense counsel's handling of the case.

Parker further argues that his lawyer should have done more to prepare his defense, and in particular, to impeach certain witnesses.

Parker offers no "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" Schlup, 513 U.S. at 324, to support his claim of actual innocence. Instead, in support of his petition he relies on reports of interviews with a variety of people; an investigation report by Peter Gauthier, dated March 19, 2015; a letter from Parker's wife, dated May 6, 2016; a handwritten document titled "CLAIMS"; a letter from Parker to his former attorney, Rodkey Craighead, dated May 18, 2012; and a letter from Craighead to the Hillsborough County Superior Court, enclosing a motion for depositions in Parker's criminal proceeding. With his objection to the warden's motion, Parker provided a statement by Mark Shackelford, dated July 21, 2009; an investigator's report dated July 28, 2009, chronicling the investigator's attempts to find witnesses for interviews; reports of two interviews done in July of 2009; a copy of the same letter from his wife; a copy of a page that appears to be from a police report, dated February 20, 2008; and a document titled "Parker Oral Argument." The appended exhibits provide no new evidence to show that Parker is innocent of the sexual assault charges.

A.  Interviews

Three of the exhibits are interviews that were conducted and reported in 2009, well before Parker's trial in November of 2011.  Because those exhibits were available before his trial, they are not new evidence that can be considered in support of his claim of actual innocence.  Further, even if the interviews were "new" evidence, they do not show that Parker is innocent of the sexual assault charges.

The July 21, 2009, report of an interview with Mark Shackelford is about an incident that occurred in April of 2008 when police came to a mobile home across the street from Shackelford's residence, looking for Parker.  Parker apparently did not respond, and the home remained dark.  It is not clear what relevance that incident would have to the sexual assaults that occurred in 1993.[2]

The report of an interview with Michael Knightly is dated July 29, 2009.  Michael Knightly is apparently the victim's brother.  In the interview, Knightly indicated that he had little contact with his family, that his sister was an alcoholic

---

[2] In support of his objection to the warden's motion, Parker submitted a copy of a statement purportedly given by Shackelford and dated July 21, 2009, which repeats the information in the interview.  Again, because the statement was provided in 2009, it is not new evidence.

and was intoxicated the night she told him about the abuse by Parker, and that his mother did not like him. Although Knightly provided unsavory details about his family, the information he provided does not show that Parker is innocent.

The same investigator interviewed the victim's estranged husband and provided a report dated August 4, 2009. The estranged husband had been in a custody battle with the victim over their child and provided a very negative opinion about his estranged wife. That opinion however at most undermines the victim's credibility but does not show that Parker was innocent.

Another investigator interviewed a person who rented a room to Parker in Manchester from 1995 to 1997 and provided a report that is dated March 15, 2015. The interview with Parker's former landlady revealed that she rented the room to him because he had been friendly with her son while they were both in jail. The landlady also said that she did not know Parker had relatives in Nashua and did not recall Parker talking about trips to Nashua. She said that Parker did not have a driver's license, that other people gave him rides, and that she could not recall many times when Parker was away overnight. The interview does not pertain to the time of the assaults, which occurred in 1993, and at most suggests that Parker did not spend

much time in Nashua from 1995 to 1997.  As such, the landlady's interview does not provide new evidence of Parker's innocence.[3]

Parker also submitted a memorandum from the same investigator, which is dated March 19, 2015, that summarizes his attempts to reach various people for interviews.  The memorandum provides no evidence to show Parker's innocence.

B.  Wife's Letter

Parker submits a letter from his wife dated May 6, 2016.  In her letter, Mrs. Parker states that she met Parker in 1999, years after the sexual assaults occurred.  She describes their relationship, her need to have him at home to help her, and her belief that the victim made up her accusations against him.  As such, the letter provides no new evidence of Parker's innocence.

C.  Other Documents

The remaining exhibits are Parker's statement of his claims, a motion from his state criminal proceeding; a letter to his defense counsel; part of a police report; and "Parker Oral Argument."  Parker does not explain how these exhibits show his innocence or why they were not available for trial.

---

[3] Parker does not explain why the landlady could not have been interviewed before his trial.  Therefore, although the interview was done in 2015, it is not new evidence as is required to show actual innocence.

Neither Parker's undated and unsworn statement of "Claims" nor "Parker's Oral Argument" asserts his innocence. Instead, the claims are statements about perceived unfairness at his trial, information possibly available from other people, and a chronology of events. Parker's "Claims" are not new evidence of his innocence. The "Parker's Oral Argument" comments on the criminal trial but provides no evidence of innocence.

The excerpt from a police report dated February 20, 2008, is not new evidence. The name Det. Dan Archambault D32 is on the paper. The excerpt pertains to the officer's response to a location to check on an "undesirable." When the officer realized that the assault victim had given that address, he talked to her boyfriend who told the officer that the victim never told him that she had been assaulted. The other documents do not appear to be relevant to the issue of innocence.

Parker has not presented new evidence that persuades the court that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. In the absence of a showing of actual innocence, Parker's petition is time barred. § 2244(d)(1).

## Conclusion

For the foregoing reasons, the warden's motion to dismiss (document no. 12) is granted.

10

The case is dismissed as barred by the statute of limitations.

Parker has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). Therefore, the court declines to issue a certificate of appealability.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 25, 2018

cc: John J. Parker, pro se
    Sean R. Locke, Esq.
    Elizabeth C. Woodcock, Esq.